Before we begin our cases this morning, I just want to, on behalf of Judge Taranto, myself, and the entire court, welcome Judge Fogel, who is our visiting judge this morning and for a couple sessions this week. And we just can't say how pleased we are to have him join us. Many of you know him for his extensive work in patent law, and we're grateful for his participation today. The first case this morning is 147049, Sahlberg v. McDonald. Ms. Fiole, whenever you're ready. Good morning. I think that we can start out with saying that the Secretary concedes jurisdiction in this case, at least with regard to PTSD. This case involves a misinterpretation by the DVA of the Regulation 3.312C, which relates to a contributory cause to a veteran's death. Remand is appropriate all the way down to the BVA in this case, simply because the error was committed at the BVA and possibly earlier at the RO. What does the BVA have to do with the interpretation of the regulation? The board misinterpreted the regulation in the first instance. But this is a legal matter, otherwise we wouldn't in fact have jurisdiction, so why would we demand to the board for that? Because the error was compounded at the board, and Mrs. Sahlberg should be entitled to present her evidence under the correct interpretation of the standard at the board level. So you're talking about a remand just after we decide the legal issue? Yes, if you decide the legal issue. But this is not the remand the government is proposing for the presumptively conclusive interpretation of the regulation? No, not at all. You want us to interpret the regulation, interpret it in your favor, and then say there's a factual question that hasn't been decided? Yes, and that's well within your authority and your jurisdiction in this case, as it does involve a misinterpretation of the statute. And the misinterpretation is entirely inconsistent with what the Veterans Court, in the cases that have considered this, has said. Has the Veterans Court squarely addressed and analyzed the question, as opposed to in a couple of instances? I know that it is commonly used, the disjunctive term, and in maybe two instances, anyway, a small number of instances, it has said, board, you considered only possibility A, you haven't considered possibilities B and C, send it back. But has it actually undertaken a full analysis of the regulatory interpretation? I'm not aware of any. I'm not aware of any either, but I think we can use Roberson, Flaming, and Tipton as guides to this. When, in Roberson, the Veterans Court held that the board's analysis failed to take into consideration that service connection can also be granted, service-connected disability, and I'm going to put in there, if it aided or led to assistance to the production of debt. The can also language from the Roberson case, I think, shows that they do interpret it to require. Right, but this is a matter of de novo review. So it would be one thing if we had a Veterans Court full analysis that said, oh, we recognize there is a question here, here is how the question ought to be answered, considering the language, considering how it fits with the rest of the regulatory language in the subsection, how it relates to the other subsection, anything that there might be in the regulatory history, how it works in practice, the use of similar grammatical constructions in other, we don't have any of that. Well, I think you have some by analogy, but not from the Veterans Court, that is true. And that's why we're here before you, is to ask you to lay this out for the Veterans Court, that the regulation consists of three distinct clauses that should be used disjunctively. Not only the punctuation supports that interpretation, but the very words of the regulation itself. Where do you get that out of the punctuation? I mean, why isn't the natural version of this, I assume, for purposes of this question, unusual punctuation, that this is a shorthand version of three separate sentences in which the subject is repeated? So you'd say, you must do this, you must do that, you must do this other thing, no and or or between them. And if that's the way it read, they would be either three requirements, all of which have to be met, or they would be some kind of a positive, where each one was meant to convey meaning for a single overall concept. I disagree that they... It wouldn't be alternatives if it were three separate sentences. They are alternatives because they are separated by a semicolon. If they were three separate sentences, they would be separated by a period. Tell me how you infer from the fact that you have semicolons, that they are meant to be disjunctive. I don't get that out of the grammar. Well, as I said, punctuation alone may not be sufficient, but when you combine it with the meanings, the separate meanings of the terms, contributed substantially or materially, and then you compare that to combined to cause, and then you compare that to aided or lent assistance, those terms are very different in meaning. So if aided or assistance was enough, under what circumstances would substantially and materially ever have any application? Aren't you reading that out? No, I'm not reading that out. How would that not be redundant? I think that it gives the VA the opportunity, or the physicians, whoever is rendering that opinion, to look at it and look at substantially or materially, and if that question is answered in the affirmative, they don't need to look... But why would you start there if there's a much lower threshold? Why would anybody in their right mind not start at the one that says, if you need this much, that's all we need to find. We don't need to worry about whatever materiality is. It contributed in some way. Unfortunately, that's the right way the regulation is written. There is no regulation... That's not written to say you have to do Clause A before Clause C. No, it's not, but as I said, if they looked at it and they've got the evidences overwhelming substantially and materially, then they don't need to get to the next one. If you get to the next one, well, if it didn't do this, combined to cause is different. It may be a somewhat lesser standard than substantially and materially, but it's different. It implies that there are two or more things that combine to cause the veteran's death. Why is that different? We're under the section called Contributory Cause of Death. That's right. So it's clearly something other than the principal cause of death. That's correct. So clearly there's something else in play other than this cause, right? Or else we wouldn't be in the contributory section. Right. So clearly there are at least two different things going on here which led to death. That's why we're in the contributory, right? That's correct. So why is that different than combined necessarily? Well, I think something could – you mean why it's contributory? I mean, we're already proven that it's contributory. Are we talking substantially and materially? Yeah. Substantially and materially could be one thing that substantially or materially contributed to your death. The combined cause could be two or more things. Aided or lent assistance could actually be a cascade of things. We all know in medical science that it's not a – it's kind of fluid. It's not static. The rules are changed depending on how advanced we've become in science. And so in aided or lent assistance, just in this situation, just to take the situation of Mr. Sahlberg, the man had PTSD. It was found 70% debilitating. PTSD – Before we get to that, let me just ask you, are you asking us simply to decide here as a matter of law that these are alternatives and each one has to be decided? Or are you asking us to also tease out what each of the three categories mean and how they're different? Well – I mean, do we have to do that? My first – the answer to your first question is yes, I would like you to decide that they are distinct clauses. They require separate analysis and evaluation and that the Veterans Court and the Board misinterpreted – subsumed into substantially and materially. Is your main argument in that regard that you think substantially and material is a higher standard that is necessarily compelled by the other two categories? Yes. Well, what if we were to define substantially and material as something more than casual? If you say there are two alternatives, there's – because clearly, casually shared applies to all three categories, right? Even if they're different categories, you would agree with that. So, if we were to think that substantially and material is pretty much the same as something more than casual, then that would take away your whole argument that there's kind of some difference here, right? I have to tell you that the language of this regulation was changed in 1989 and it's never made it into any version of the CFR. 1989, the language was corrected from casual to causal. I thought it was a typo. I've been reading it as causal all along and then the other day – Wait, is it now casual or – It's causal. I have been reading it as causal, but then the other day I looked at it and I said, that word's casual. Casual. We went through the regulation history. In 1989, there is – do you have the site of it? 1989, there is a change to the regulation, changing casual to causal. Moving to you. So, what it now says, you're telling me, is – and then I'm going to ask you what in God's name this means. It is not sufficient to show that it causally shared in producing death, but rather it must be shown that there was a causal connection. I know you're going to ask me what that means and I've been struggling with that one all along. That doesn't make sense either and I would ask the court to clarify on that one also because I think it does the same thing. Those two terms, to me, say the same thing. It made more sense when the word was casual because if you look up the meaning of the word casual, it's kind of like sort of ancillary. But when you get to causal, there's very different meaning to that phrase. Since I had no idea what casual meant, I'm at least glad that that's not in there, assuming that that's – Well, actually, I think if it was casual, I had a better analysis. Like lying about casual or something, or what does that mean? Well, a casual cause. I have no idea what that means, but it's an incorrect recitation of the regulation and it has never made it even into the very last version and we've checked every one. Can I just follow up on a question my colleague asked and I have another one? So if you read out substantially and maturely from the aided or unassisted, what does aided or unassisted mean? One percent, two percent? In some sense, everything we've done in our lives has some relationship to what happens at the end of our lives. So how do you call out something that actually aided or unassisted if it's not substantial material? I don't know that you necessarily can put a percentage to it, but I think that, again, if we – I only have three minutes left, so if we can go into Mr. Solberg's condition, if it aided or unassisted, the medical science, I mean, there can be a cascade of things. One leads to the other. One directly leads to the other. And the science can show that. And then you get to the death part of it. So you can say that, but for this severe stress that he suffered, it would not have resulted in the severity or the onset of his vasculitis. There seems to be some emerging literature that supports that stress can not only cause vasculitis, it's an autoimmune disorder. About 50 percent of autoimmune disorders have been shown to be caused by stress. Vasculitis is a horrible, rare condition of the vascular system. It leads invariably to kidney failure. People who have kidney failure undergo dialysis. I want to make sure I ask my other question because I want to be sure I've thoroughly understood this. Mrs. Solberg presented all of her evidence, correct? Your problem is just that you don't believe that the evidence was analyzed correctly. I don't believe that either the Board or the Veterans Court interpreted the statute correctly. And so when they did look at the evidence, they were looking at the wrong analysis. But there actually is a fairly thorough discussion of the facts and the assessment of what caused what. I would disagree. I would disagree that either of the physicians' opinions were of such a level to override Dr. Spaduto's opinion, but I think that's metastatical. You're talking about weighing this. Yeah, the weighing. That's beyond the jurisdiction of this Court. But I'm just saying it's not as though she wasn't given the opportunity to present evidence that would track on your reading of the statute. No, I don't think she was. What evidence would she present that wouldn't track your reading of the statute? Well, as you notice, the Board and the Veterans Court said that although Dr. Spaduto's opinion was favorable, it was not sufficient. They said because it didn't address the relevant factors. It didn't do the relevant inquiry. I'm sorry, counsel. Now you're talking about the way they analyzed the evidence. I'm just talking about the evidence that's in the record. She presented the evidence that would have been supportive of her position given a proper interpretation of the statute. As a pro se litigant, I don't think she is necessarily in a position to know exactly what sort of evidence she's supposed to submit, particularly when it's unclear and a mishmash of things that focus on contributed substantially or materially. One could look at everything submitted to the physicians and the questions that they were supposed to answer and the way they did answer the questions that contributed substantially or materially was the sole standard. My time is up. I have one more question, at least, and if my colleagues do, that's absolutely fine. In the Veterans Court opinion on 8-3, and this is cited in the government brief, there's this paragraph which is what the Veterans Court provided as the summary of the medical opinion. In that, they talk about the principal cause, but under 5, they say speculation would be required to identify PTSD as a principal or contributory cause of death. So if we've got a medical opinion that says that speculation would be required to identify PTSD as a contributory cause of death, that doesn't say as a substantial material. I mean, isn't that sufficient to answer the question on any of these categories? No, I don't think it is because what the RO submitted to the physicians, the questions they submitted, really highlighted contributed substantially or materially. It did not ask them to consider combined cause, aided or lent assistance, and neither of the physicians did that. And I think that where you're referring to this, the speculation was based on substantially or materially. I'm going to ask you one question, having been given license to do that a moment ago. There's been no talk in either side's briefs, or essentially no talk, of the other subsections of this regulation. And the other subsections, one way to read them, they use the term material at least twice. There's a suggestion that materiality is the governing standard, and there are certain kinds of either exceptions or explanations of what would constitute a material contributing factor. But it seems to me that they tend to support the notion that in the sentence that you're talking about in subsection C, that all of this is meant to illuminate a governing standard of substantial or material. I think what you're referring to is section C1, and then there's 2, 3, and 4. Those are distinct subsections also that have to be considered separately, at least as the Veterans Court has determined. One way I guess of asking the question is, or I'll state it and then I'll ask you to respond. They seem to me to presuppose that the standard is material contributing, and then they give certain kinds of elaborations. But the presupposition is material contribution is the governing standard. Tell me why that's wrong. Well, I have not considered that question. Okay, that's fine. If I can answer it on rebuttal, if you don't mind, that would give me a chance to consider it. All right. We'll restore to your rebuttal time of two minutes, and then we'll hear from the government. May it please the Court. If the Court reaches the merits of Mrs. Sahlberg's new argument, it should find that a contributory cause of death under the regulation is one that contributes substantially or materially to cause death. And Judge Taranto, I think that you get to the crux of the issue with your question, which is that you have to read the regulation in context. And when you read the regulation in context, it's clear that the threshold is whether or not the contributory cause of death was substantial or material. You don't make anything in your brief of these other paragraphs, one, two, three. We don't, Your Honor. However, we do argue that punctuation alone is not sufficient to determine a regulation's plain meaning. You have to look to the text as a whole, to the context, to not just one sentence or one clause, but to the entirety of it. What is the word plain doing in this discussion? I mean, I would have thought that the one thing we could pretty much agree on here is that plain it is not. It may have, in context, considering a lot of things, only one sensible ultimate meaning. But even that doesn't strike me as plain. And this is even before you get to any kind of power deference, I guess. Sure. Well, I can certainly understand your questioning that the regulation isn't plain. But when you look at it in context and you consider that the VA is asking doctors and medical experts and adjudicators to make difficult determinations about what is a service-connected contributory cause of death, where the individual that we're talking about may have several illnesses, disabilities, or ailments, there's no simple metric that would allow easy quantification of 2% or 30% or something like that. So what the regulation does is it provides a framework for the VA to make these determinations. Can I ask you, just we talked a little about that last sentence, just if you can add some light to that last sentence. I thought it read casually, but now we hear that the current term has been changed to causally. Is there any sense to that sentence? My understanding is the regulation as it is today reads that it is not sufficient to show that it casually shared. Oh, that it says casually, not causally? That's my understanding of the regulation. If I'm incorrect about that, I certainly apologize. So you're not aware of the 1989 alteration that I think was referred to? No. So what does casually mean? Casually means not substantial or material. And I think that if you consider this case in context, and I know that we haven't talked about the government's position for remand and prudential considerations, but there's one that's very important, or there are two that I'd just like to discuss briefly today without going through what's in our brief. And the first is that the Veterans Court certainly has expertise with these matters, and they've considered many cases dealing with contributory causes of death, so they haven't hit the issue square on. And the other is that the facts of this case are such, and of course this court can't consider facts, that were the court to remand this case to the Veterans Court, it's very possible that the Veterans Court may find, under either party's interpretation of the regulation, whether it's the government's or Mrs. Sahlberg's, that she's not entitled to benefit. Well, let me ask you this, and this betrays my ignorance perhaps of how this process is supposed to work, but if we look at the record and she loses under either standard, why do we need to remand? Well, Your Honor, this court has limited jurisdiction to consider facts. My understanding is that this court, I believe, could go through a harmless error analysis. Right, that's my question, but we obviously can't weigh facts. But if you believe everything that's in there, and you say, regardless of what the standard is, you don't get it, why go through the pain of remand? Our position, Your Honor, is that under the harmless error standard that the court set forth in the Wood v. Peay case that comes from the, and I may not get this name right, but Smirnoff v. Prince v. Peay case, that yes, if the facts are undisputed, then the court does have jurisdiction to make a harmless error. This is a regulation that, at least according to the citations, seems to come up rather a lot. Yeah. What sense would it make, assuming that there is a realistic possibility that the interpretation might make a difference, what sense would it make either for us not to clarify the interpretation of the regulation or to send it back to the veterans court for what I thought you were suggesting, the veterans court to say to itself, we don't need to decide it. Isn't clarification of this regularly recurring regulatory question a good idea, assuming that we don't pretty much know that it makes no difference in this case? Well, our view is that there hasn't been confusion. The regulation has been in existence since 1961. You're arguing for an interpretation that I gather it is undisputed at least in a couple of cases the veterans court has acted contrary to, has said you, the board, have decided the first clause, but you haven't decided clauses two and three. Go and do that. That's not how we read those cases. So, for example, in the Flaming Thief Prisby case, the veteran died of lung cancer, and he was service-connected for tuberculosis. I'm sorry. Is there no case? I thought that, well, there was a collection of cases in which people used the term or. Put those to one side. But that there were at least two cases, maybe one case, in which the veterans court said the board considered the first clause. It didn't consider the other two clauses, or at least one of them, remand for the board to do that. Yes, that was the Roberson v. Shinseki case. In that case, the VA conceded before the veterans court that the medical opinions in the case, and there were, I believe, two of them had no rationale in them whatsoever. And the private opinion had a rationale. It wasn't that it lent assistance to the production of death or combined to cause death. It was that the service-connected tuberculosis likely weakened his lungs and made him more susceptible to his cause of death. So there the veterans court remanded to consider the evidence in light of all of 3.312C, not just C1 and not the three clauses that we're talking about, but all of it. And then on remand, the board decided to test correctly without using ORAL and ultimately didn't service-connect that. I don't remember, in your brief here, did you make the argument that the interpretive question in front of us should not be decided because it is quite clear that under any interpretation the claim is meritless here? No, Your Honor, we didn't. We argued generally that this case would benefit from briefing before the veterans court and the veterans court's ability to consider factual issues. Can you explain to me, just go over again, what the government's position is on the statutory construction? I mean, you're saying contributed substantially or materially, so let's just say contributed materially. The other two clauses are just examples of what the regulation perceives as a material contribution or what? Correct. Our position is that the language that follows substantial or material serves to amplify, clarify, and explain what a substantial or material contribution is. It gives the adjudicators and the doctors tools and a framework to consider whatever the service-connected disability is in any one case to find out whether it meets that threshold of substantial or material. So why would it not be your view that in every case one ought to look at all three prongs, whether they're disjunctive or explanatory or the word you used, which is framework. Even under your view, if it's a framework, why shouldn't the fact finder then go through the whole clause and not stop at contributed substantially or material, but really look at, be required to look at the rest of the clause? Our view is that the fact finder is required to look at all of the regulation. However, the facts of any given case may not necessitate that they spell it out and go through the analysis. In this case, the two medical experts that looked at the facts of this case, the two doctors, the first one, for example, in the September 2010 medical opinion, which is at Joint Appendix 199, concluded that there was no established correlation between the PTSD and the veteran's vasculitis. He said that correlating service-connected PTSD would require significant speculation, which, Your Honor, goes to one of your earlier questions. If you look back at the regulatory text and you go to 3.312A, it states that the issue involved determining service connection for whether a disability is a contributory or principal cause of death will be determined by the exercise of sound judgment without recourse to speculation. Here, it was such a clear case that there was no need for the adjudicators to go through the full analysis, which is different... But that's a different question than what we've got here. This is so strange to me, because it seems to me there's not that much daylight between your position and your friend's position, because you're all saying that you have to look at the entire clause and all of the factors, whether they're disjunctive or not. And so you're agreeing with her, and you're just saying the difference, though, is kind of a process difference. Like, do you have to really spell out your analysis with respect to each factor as opposed to just giving the fact finder the benefit of the doubt that they looked at the right thing? That's a very different question than the one I perceived as being presented in this case. Did you get my confusion? I think I do, Your Honor, and correct me if I'm wrong, but I think that the issue resolves on whether you put... If you put the or into the regulation, then what does substantial or material mean if that necessarily makes lent assistance a lower threshold? In other words, there's an A, B, or C criteria. But here, when you read the regulation in its entirety and you look at just this clause, it's clear, at least in our view... But you're saying that the fact finder has to consider all portions of them, each of the clauses. Correct. So I think that two of the veterans' cases, or all three of the veterans' cases that I think we both agree are the most on point of all of them. So if you take a situation where a veteran has service-connected tuberculosis and his ultimate cause of death is lung cancer, in that case it may make sense to consider whether the tuberculosis lent assistance to the production of death, whether it was a substantial or material cause, because if they're connected, they both affect the lungs. Whereas in this case, where the question is about PTSD and the veteran died from an autoimmune disorder that led to end-stage renal disease, it didn't make sense. Well, if there were evidence, I mean, if the fact finder had determined that the PTSD actually did cause the onset of the vasculitis or make the vasculitis worse, then it would meet that standard, but that's not what the fact finder found. Right. So here the fact finder found that vasculitis and end-stage renal disease were the contributory causes of death. If those were service-connected, then certainly they would have lent assistance in a fashion that was substantial or material. Can I ask what, at least, I conceive of as a version of the question that the judge asked? If the three clauses are attempts to illuminate a single standard, then it would appear that one would need to ask the question, in aid or, whatever the other word is, aid or lent assistance to, in trying to understand whether a cause was a material cause. In which case, I guess the question is, what difference is there between that approach and viewing the three clauses as alternatives separated by an implied disjunction? The difference, as I understand the question, is that the bar is substantial or material, and the aided or lent assistance language or the combined-to-cause-death language are tools that the doctors can use or the experts can use to make that determination about whether something is substantial or material. And that's borne out throughout the regulation, which all of the problems, as I mentioned earlier, all speak to whether something has a material effect or renders somebody materially less able. So is the real fight here, the essence of the fight here, whether or not we apply, we necessarily apply material contribution as opposed to just a contribution? Is that where this ends up? Is that what you're saying? I mean, I can see that. I'm not, you know... Yeah. But I'm just trying to figure out whether that's really then what's going on here, as to whether or not material remains a threshold. I think that that's correct, Your Honor, because if the court were to rule against us, the test might effectively become lent assistance to the production of death, because that would then be rare. I'm thinking that it's something other than it doesn't therefore have to be a material contribution, as long as it went through. Or just to paraphrase it, I mean, actually, in a way, I think you're saying it is disjunctive, but it's disjunctive as modified by substantial and material. There's different kinds of substantial and material. It could be related around assistance, it could be contributed, it could be caused, but you can't read out the substantial and material. Is that right? That's really what you're saying? I believe that's correct. I don't want to agree to something. No, I know. I'm not trying to trap you here. No, I understand. But you're just saying you can't look at the... it's not that disjunctive. In other words, you can't look at the last one in the chain and say, well, the preceding language doesn't have anything to do with it. Right. Our view is that if it combined to cause death, it was substantial and material. If it lent assistance to the production of death, it was substantial and material. Can I just ask one more? Just the last sentence, I don't know, the one thing I think everybody agrees on is that at least the second portion of the last sentence, we're all confused about the first portion, but the last portion says, rather it must be shown that there was a causal connection. So everybody agrees that no matter what standard or whether they're disjunctive or not, there has to be a causal connection, right? Correct, and here the board found on Joint Appendix 93 that there was no causal connection, which goes back to our argument for remand and the prudential considerations. Well, in your view, can there be a material or substantial contribution without a causal connection? No. I mean, the two necessarily. Or the other way. Or the, yeah. Correct. Well, then why can't there be a causal connection without it being material? That is, isn't the causal connection requirement of the last sentence of Paragraph 1 a weaker requirement than material contribution? It's a… Which would make it of a piece with the second and third clauses of the previous sentence, these things have to be present. Right. And that they are necessary conditions, which is to say conjunctive with a material contribution. Before, under our reading of the regulation, before you can find that a contributory cause of death was a substantial or material contributing factor, there would first have to be a showing that there was a causal effect. And then you would go into the analysis. How big an effect? How big? That is the question. You would then ask the question, how large a contribution did this make? Correct. And what they want is something that a relevant medical expert is prepared to say, this did contribute in some way because the PTSD causes stress and the stress releases certain kinds of chemicals in the body and that can have certain effect. And we have no idea how big an effect, but some, yeah. Right. And the question is, should that be enough? And isn't that what the dispute is about? Yes. Thank you, Your Honor. Thank you. Judge Farber, I think I have an answer to your question, I hope anyway. Section 2, where the word materially is used, or subsection 2, they are referring to minor service-connected disabilities, particularly those of a static nature, which is fixed or stationary condition, or not materially affecting a vital organ, would not be held to have contributed to death primarily due to unrelated disability. Section 3 also refers to the primary cause of death as being unrelated to the disability. I think that those two sections, when they use materially, that if you have a primary cause of death that is unrelated to the service-connected disability, they're explaining in those circumstances what would be a contributory cause of death. And the fourth one, where they're talking about, let's see, eventual death can be anticipated, but even in such cases, there is for consideration whether there may be a reasonable basis for holding that a service-connected condition was of such severity as to have a material influence in accelerating death. I think that given the way they use materially in each one of those, it's distinct to each one of those sections as opposed to modifying what is said in C generally. And if we do look at the definitions of each of the terms used in C1, they really are different. And it's very hard for me to agree that there is a requirement of substantially or materially when the phrase combined to cause is used or aided or lent assistance. Contributed has played a significant part in bringing about an end result, substantially as being largely but not wholly that which is specified materially as having real importance or great consequence. Combined to cause. Combined means acting together. And cause is defined to serve as a causation of. So, as I said, acting together would be two things working together. Maybe neither one would be materially substantial, but the two together synergistically somehow combine to cause the death of the veteran. And then aided or lent assistance, which I think also has to be really given a hard look at because if you start out with a condition that you say, okay, PTSD was not the primary cause, but did it involve this cascade of things that happen in the body to cause the veteran to either get a condition or it so exacerbated the condition that that condition then was the primary cause. I don't think that material can be read into subsections or to subsections merely based on the fact that it is used in the sections following. I think they're used differently, particularly when they're talking about it, that the actual service-connected disability is unrelated in two and three. I don't want to take up much of your time yet while your time has expired, but do you have any further illumination on this word casually versus causally? Yes, I do. It is 54 Federal Register, October 18th, 1989. 54 Federal Register. Do you want to post a note? No. Oh, you don't have a page number, just a date, October 18th? Yeah, it's very short. When you go into the regulation in Westlaw or Lexis, there will be a hyperlink to the October 18th, 1989 Federal Register. Click on the hyperlink or have your clerk click on the hyperlink. You'll find it. I was quite surprised to find it. 42803. Yeah. That's listed at the bottom of the section in the CFR, but the word didn't get changed. Didn't get changed. All right. Okay. All right. Thank you. Thank you very much.